## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Docket no. 2:15-cr-00032-GZS |
| LAWRENCE R. ESTRELLA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER GRANTING COMPASSIONATE RELEASE

Before the Court is the Amended Motion for Compassionate Release (ECF No. 42). For reasons briefly explained herein, the Court GRANTS the Motion.

Defendant Lawrence Estrella pled guilty to one count of interstate transportation of stolen property in relation to his 2014 transportation of stolen N.C. Wyeth paintings. Following his guilty plea, on July 14, 2015, this Court sentenced Estrella to 92 months of imprisonment, to be followed by three years of supervised release. This Court has denied two prior pro se requests for compassionate release filed by Estrella. See ECF Nos. 29 & 34. In denying Estrella's first request, the Court explained that the record presented "a case of physical deterioration related to the aging process, but the documented deterioration is not sufficiently serious and extraordinary to grant him the relief he seeks." United States v. Estrella, No. 2:15-CR-00032-GZS, 2019 WL 6689897, at *2 (D. Me. Dec. 6, 2019). Nonetheless, the Court acknowledged that "further medical developments" might change its assessment of whether Estrella met the high bar of "extraordinary and compelling reasons," which is further described in U.S.S.G. § 1B1.13 & Application Note 1. Id. *1-*2.

While acknowledging that Estrella has exhausted administrative remedies for his latest request, the Government nonetheless opposes the request indicating that none of the information put forward by Estrella warrants a finding of extraordinary and compelling circumstances. On this point, the Court disagrees. Estrella now appears before the Court as a 70 year old man with serious ongoing health issues, including high blood pressure, renal cancer and possible COPD. He also has mobility issues related to arthritis and degenerative disc disease and has sought medical care for multiple falls in recent years. In addition to this apparent deterioration related to the aging process, Estrella now is facing the COVID-19 pandemic.

Specifically, he is incarcerated at FCI Fort Dix, which has had multiple confirmed COVID-19 cases and continues to have active cases within its inmate population. See, e.g., United States v. DeBartolo, Cr. No. 14-016 WES, 2020 WL 3105032, *2 (D.R.I. June 11, 2020) (granting compassionate release to a defendant housed at FCI Fort Dix and noting an infection rate of 20 percent based on testing of 240 inmates). As detailed in his Amended Motion and the attached exhibits, Estrella presented with COVID-19 symptoms in April 2020 for over a week. However, he did not receive a COVID test until May 6, 2020. After testing positive for COVID, he was moved into a quarantine unit for three weeks. He thereafter tested negative for COVID on May 22 and, again, on May 27. He was then moved to another isolation unit for inmates who test negative after a positive test, where he remained until June 10, 2020. (See Def. Reply (ECF No. 44), PageID # 201.) On that day, Estrella was moved back to his initial quarantine unit and told that his fourth COVID test, which Estrella was told was "more accurate," had come back positive. (Def. Sur-Reply (ECF No. 45), PageID # 206.) As of June 15, Estrella "does not know anything further about treatment or how long he will be quarantined." (Id. at PageID # 207.) But, by all

accounts he has been experiencing symptoms of COVID or subject to COVID-related quarantine for seven weeks.

As the Government acknowledges in its response "all the sequelae of COVID-19 infection are not known to science." (Gov't Response (ECF No. 43), PageID # 198.)  However, the narrative detailed in the motion papers strongly supports a finding that Estrella is at higher risk for sequelae given his age and underlying health conditions.  Moreover, the record also supports a finding that Fort Dix is ill-equipped at this time to provide timely care for Estrella should he experience additional illness related to COVID or any of his other underlying health issues.  In the Court's assessment, this confluence makes Estrella's current situation extraordinary and compelling. U.S.S.G. § 1B1.13 & Application Note 1(B) & (D).

Additionally, given his age and mobility issues, combined with no disciplinary record during his term of incarceration, the Court finds Estrella is not a danger to the safety of any other person or the community.  Moreover, the Court notes that Estrella currently has a release date of June 5, 2021, less than a year away.  Given the combination of his own health conditions and the strain created by the pandemic within BOP facilities, the Court concludes that it is unlikely that spending an additional eleven months in prison will yield any additional training, treatment, or deterrence for Estrella that would make him more successful in his transition to supervised release.

Having given full consideration to the entire record and all of the applicable factors listed in 18 U.S.C. § 3553(a), the Court exercises its discretion  to reduce Estrella's term of incarceration and allow him to begin his term of supervised release.  However, to ensure Defendant's successful transition to supervised release, the Court also exercises its discretion to stay execution of an amended "time served" judgment for Estrella for thirty days so that an approved release plan can be developed and Estrella can complete an additional 14-day pre-release quarantine.  This stay is

3

subject to a further extension of up to thirty days upon the Government showing that additional time in custody is necessary to ensure that Estrella is COVID negative upon his release and that his release plan can be implemented.

    SO ORDERED.

                                                  /s/ George Z. Singal
                                                  United States District Judge

Dated this 16th day of June, 2020.